UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JEFFREY PETERSON,

        Plaintiff,                     Case No. 2:15-cv-124

v.                                         Honorable R. Allan Edgar

SCOTT STRAIT, et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

    I.        <u>Factual allegations</u>

Plaintiff Jeffrey Peterson, an inmate at the St. Joseph County Jail, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Mackinaw County Sheriff Scott Strait, Undersheriff Edward M. Wilk, Jail Administrator Timothy Ahlborn, and Supervisor of Community Corrections Robert St. Louis. Plaintiff contends that Defendants retaliated against him for his conduct in filing a lawsuit against jail officials, *Peterson v. Strait, et al.*, No. 2:15-cv-42 (W.D. Mich.), on March 11, 2015.

Plaintiff alleges that in April of 2015, while he was confined in the Mackinaw County Jail, he began volunteering in the inmate library, where he put away books and magazines and attempted to organize the library. Plaintiff alleges that on May 22, 2015, he was approved for the PA 511 Program and assigned to "inside the jail" work detail. The PA 511 Program affords county jail inmates the opportunity to earn time off their sentences for good behavior through a work credit that equals one day off for each seven hours worked. On June 17, 2015, in a brief meeting with Defendant St. Louis, Plaintiff was told that he would be assigned to jobs such as washing cars, cleaning the lobby and front offices, doing dishes, cleaning the kitchen, doing laundry, and painting. However, Plaintiff was never assigned any job duties. Plaintiff asked Defendant Ahlborn if he could earn credits for volunteering in the library and on June 18, 2015, Plaintiff began to receive credits for his volunteer work.

On July 17, 2015, Plaintiff was exiting the conference room after using the Westlaw terminal, when Defendant Ahlborn told Plaintiff to see Defendant St. Louis to report his hours, despite the fact that he knew that Plaintiff had not been given any hours. Plaintiff believes that this

statement was made in an effort to frustrate and humiliate him. On July 18, 2015, Plaintiff wrote a letter to Defendants Strait, Wilk, Ahlborn, and St. Louis, complaining of the allegedly retaliatory refusal to give him work assignments.

On July 25, 2015, Plaintiff received a few hours of work doing laundry. Plaintiff believes that this was the result of his July 18, 2015, letter to Defendants. However, Plaintiff was only asked to do laundry on nine other occasions during the remainder of his time at the Jail, and was not given any other job assignments. Plaintiff states that he was only given jobs on weekends and "averaged 2-5 work opportunities" a month during the last four months of his sentence. Plaintiff was transferred to another facility on September 23, 2015. *See* ECF No. 4. Plaintiff contends that other inmates received more work assignments and that this discrepancy proves that he was being retaliated against for his litigious behavior. Plaintiff states that Defendants' retaliatiory conduct has affected the length of his sentence and seeks damages and equitable relief.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff asserts that he was not given the same amount of work assignments as other inmates because Defendants sought to retaliate against him for his conduct in filing a lawsuit against jail officials. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse

action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As noted above, Plaintiff filed *Peterson v. Strait, et al.*, No. 2:15-cv-42 (W.D. Mich.) on March 11, 2015. Plaintiff was subsequently approved for the PA 511 program on May 22, 2015, but was not given any jobs until July 25, 2015. Plaintiff believes that this was because of a desire to retaliate against him for his lawsuit. However, Plaintiff ignores the fact that Defendant Ahlborn approved him to receive credits for his volunteer work in the library as early as June 18, 2015. Moreover, Plaintiff did receive some job assignments pursuant to the PA 511 program. In addition, although Plaintiff makes a conclusory assertion that he did not receive as many job assignments as other inmates, he fails to allege any specific facts in support of this claim.

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if

> temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010). The court concludes that Plaintiff's conclusory claims of retaliatory motive are insufficient to state a claim.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: 10/23/2015                     */s/ R. Allan Edgar*
                                      R. ALLAN EDGAR
                                      UNITED STATES DISTRICT JUDGE